In the Matter of the Estate of JESSIE KINSEY FLYNN, Deceased.

Surrogate's Court, Fulton County, September 19, 1930.

*Horace Heffernan*, for the administratrix.

*F. Law Comstock*, for the respondent.

CALDERWOOD, S. On December 13, 1929, a decree was made and entered in this court in the above-entitled proceeding ordering and directing Archibald H. Durfee to pay over to Lydia W. Bartlett, as administratrix of the estate of Jessie Kinsey Flynn, deceased, $1,907.36, found and decided therein to belong to the estate of said deceased and to have been procured by respondent by means of the unauthorized use of the name of decedent, and without her knowledge or consent, on a certain check presented to and paid by Trust Company of Fulton County, and on a considerable number of withdrawal slips or orders on a special or interest account of decedent presented to and paid by Fulton County National Bank, with interest thereon from June 9, 1928. Said decree also directed payment by the respondent to said administratrix of the costs and disbursements of said proceeding thereby fixed and allowed. There has been no appeal from said decree. Execution has been issued out of this court to the sheriff of Fulton county thereon and returned by him wholly unsatisfied. The administratrix has moved this court for an order adjudging the respondent guilty of a contempt of this court, alleging that he has, after demand duly made for payment accompanied by personal service upon him of a certified copy of said decree, neglected and refused to obey the directions of said decree, and said motion is now before me for determination.

On March 28, 1930, on return of the order to show case granted on said moving papers, the administratrix appeared herein by Horace Heffernan, her attorney, and said respondent appeared in person and by William H. Freeman, his attorney, and respondent having agreed to make payments of five dollars weekly to said administratrix to apply in satisfaction of said decree, on request and consent of parties so appearing said proceeding was duly adjourned to July 12, 1930, and on said date said administratrix appeared as before and respondent appeared in person, and it then appearing that save for payments aggregating twenty-five dollars the respondent was in default, on consent of said parties such proceed-

ing was further adjourned to September 12, 1930, to enable respondent to make up such payments in default, he agreeing to continue such weekly payments of five dollars.

At the adjourned hearing held September 12, 1930, said administratrix appeared by her said attorney and moved for the granting of the order sought by said motion, stating in open court that respondent had made no payments under said decree save said sum of twenty-five dollars. The respondent appeared in person and by F. Law Comstock, his then attorney, and objected to the granting of such order on the ground that I have no jurisdiction to grant same. Respondent contends that I, having on August 1, 1930, filed a prospective resignation of my office as surrogate to become effective December 31, 1930, by reason of the decision of Mr. Justice HEFFERNAN (*Matter of Cassedy* v. *Wilkins*, 137 Misc. 748), recently made in proceedings pending before him in the Supreme Court, now have no power or authority to act as surrogate. To enable respective counsel to prepare and present briefs on the objections thus raised, and to enable respondent to present written objections if desired, said proceeding was duly adjourned to this time and place.

And said respective parties now appearing before me herein as on the last hearing, the said respondent having for the first noted a special appearance and added as a further ground of objection that the Surrogate's Court has no jurisdiction to punish for contempt in this case, and after hearing F. Law Comstock, attorney for the respondent, in support of said objections, and Horace Heffernan, attorney for the administratrix, in opposition thereto, due consideration having been given to the brief filed by said respondent, I hereby overrule said (amended) objection that this court has no jurisdiction in that I have resigned my office as surrogate of said county, leaving a vacancy in such office which has not been filled in the manner provided by law, and grant to the respondent an exception to such ruling; and I further rule and decide that as the duly elected, qualified and acting surrogate of Fulton county, clothed with the evidence of such office, I am in possession of the powers and authority and have resting upon me the duty to perform the functions of said office of surrogate.

I was not a party to the proceedings in the Supreme Court to which respondent's attorney referred in making his original objections. It is, therefore, difficult for me to understand on what theory respondent's counsel contends that the question of the title to my office or of my powers or authority as surrogate were therein involved or intended to be determined or affected. For the trial of the title to a public office or the right of the officer to exercise

the duties and functions thereof our laws provide appropriate means and proceedings; but in each instance it is essential that the officer to be affected thereby must be made a party thereto and be given full opportunity to be heard and to defend. Until there be an order or decision in an action or proceeding to which I am a party, determining that I have no title to or right to exercise the powers of my office as surrogate, or until I voluntarily terminate such trust, I deem it my duty under the Constitution of this State and my oath of office to function as such public officer, and as a *de jure* judge.

In *Sylvia Lake Co.* v. *Northern Ore Co.* (242 N. Y. 144) our court of last resort in dealing with the acts of a *de facto* judge, has declared the law of this State to be: " A *de facto* judge assumes the exercise of a part of the prerogatives of sovereignty and the legality of that assumption is open to attack by the sovereign power alone. This rule is founded upon the considerations of policy and necessity. It has for its object the protection of the public and individuals whose interests may be affected. Offices are created for the benefit of the public. Private parties are not permitted to inquire into the title of persons clothed with the evidence of such offices, and in apparent possession of their powers and functions.

" The supremacy of the law could not be maintained or its execution enforced if the acts of a judge having a colorable but not a legal title were to be deemed invalid. It is a well-established principle, recognized in all jurisdictions that, so far as the public and third persons are concerned, the official acts of a *de facto* judge are just as valid as those of a *de jure* judge. This is especially true when the State requires a judge to file in the office of the Secretary of State a certificate containing certain information. No third party can be permitted, so long as the State allows such certificate to remain on file, to question the truth of the statements therein contained."

Within ten days after January 1, 1928, when I entered on the duties of my said office for the third term, I made and signed a certificate required of judges of courts of record by section 23 of the Judiciary Law, stating my age and the time when my official term would expire, etc., in the office of the Secretary of State, and such certificate still remains on file in said office.

It must and does follow that the same law as declared by our Court of Appeals in the case above cited applicable to a *de facto* judge applies with equal force to one rightfully holding the title and exercising the functions of his office.

The next question for determination herein is, should the order adjudging the respondent to be in contempt of court be granted herein.

Under the rules and practice of the Surrogate's Court and under the provisions of the Surrogate's Court Act, it has been held (*Matter of Amy*, 116 Misc. 48) that before a respondent can be adjudged to be in contempt, it must appear not only that a certified copy of the decree with which he was required to make compliance was served upon him, but that service was accompanied by due and proper demand for him to make compliance with the terms of the decree. The practice further requires that the demand must be made (1) by the legally appointed representative in person (in this case the administratrix), or (2) by the attorney in the original proceeding personally, or (3) by a person especially authorized by the representative. This authorization must be in writing, acknowledged by the representative, and the original should be exhibited to the respondent at the time of the demand.

Certified copy of the said decree has been served on the respondent after return of said execution wholly unsatisfied. He has refused to comply with the directions contained in said decree, except that he has paid twenty-five dollars thereunder. It appears from the moving papers herein, however, that the demand above referred to was not made by the representative in person, nor by her attorney in the original proceeding, Mr. Heffernan, personally. The demand was made by H. Andrew Schlusberg, an attorney who did not appear in said original proceeding for the administratrix. Although the fact has not been called to my attention by the counsel, on examination of said moving papers I find that the authorization to Mr. Schlusberg to make the demand aforesaid is in writing and purports to have been signed by said administratrix, but it was not acknowledged by her. It is apparent, then that the requirements of the practice and rules in contempt proceedings have not been complied with herein.

The application for such order adjudging said respondent Archibald H. Durfee to be in contempt is, therefore, denied, without prejudice to renewal on compliance with decision in *Matter of Amy* (116 Misc. 48) and the cases therein cited and the provisions of the Judiciary Law.